eight of them were proved September 6th, 1867; the debt of one of them was proved September 12th, 1867; and the debt of the remaining one of them was proved November 22d, 1867. The day for showing cause against the discharge of the bankrupts was December 28th, 1867. Abundant opportunity was afforded to these creditors to examine the bankrupts on oath, under section twenty-six, but none of them took any steps for that purpose. The bankrupts were examined at considerable length by one of the assignees, on an order for that purpose obtained by the assignees. Those examinations took place from December 16th to December 27th, 1867, and are on file among the papers. Under these circumstances, I do not think it would be reasonable to require the bankrupts now to submit to a new examination under section twenty-six, especially as no reason for doing so is shown by affidavit.

## Case No. 7,106.

### The ISIS.

## Case No. 7,107.

### The ISLAND BELLE.

[21 Leg. Int. 60;  26 Law Rep. 263; 5 Phila. 501.]

District Court, E. D. Pennsylvania. Feb. 19, 1864.

CADWALADER, District Judge. This vessel, formerly the General Ripley, was built in 1861, at Charleston, South Carolina. She went to sea on her first voyage, without being coppered, in the latter part of October, 1861, with a cargo of rice; and, having avoided the blockading force, arrived at Nassau, New Providence, early in November. On the 12th November, 1861, she sailed, without having unladen her cargo, for St. Jago de Cuba, which she reached on the 20th. On the 22d she sailed, without having unladen, for Trinidad de Cuba, where, on the 28th, her cargo was discharged. She there took in a cargo of sugar and molasses,

with which, on 20th December, 1861, she sailed for Baltimore, where it was intended to copper her. On the 31st December, 1861, she was captured when about twelve miles southeast of Bull's Bay. It has appeared, upon investigation, that, on this voyage, no breach of blockade was intended, but that the destination was really Baltimore. The only questions remaining have been those of ownership of the captured cargo and vessel.

Her master, Thomas Phillips, had commanded her from the time when she was built. He describes himself as a British subject, having no permanent place of residence, and as having never had any interest in either vessel or cargo, otherwise than as master. He states that, at Charleston, the person with whom he transacted all business concerning the vessel, was a Mr. Canalle, a resident of that place, and that her owners were four other residents of Charleston, and this Mr. Canalle. That the ownership of the outward cargo of rice was in the same five persons appears, I think, from the manifest and other papers. The manifest shows that the rice was taken on board in five distinct shipments, marked A, B, C, D, E, corresponding with the number of part owners of the vessel. The consignees of the vessel and cargo at Nassau were Sawyer and Menendez. To these gentlemen Mr. Canalle, who corresponded with them as if he were sole owner of the vessel and cargo, wrote from Charleston on 5th October, 1861, with directions to dispose of the cargo for his account, and afterwards, if they could dispose of the vessel, to do so, and invest the proceeds of both vessel and cargo in English bills of exchange. He wrote, in this letter, that the vessel was new, and too good to be used in running the blockade; and moreover, that when she was loaded, there was difficulty in getting her in and out. He added, "The vessel is held in Captain Phillips' name. This is done to facilitate the disposal of her, and to prevent the necessity of a power of attorney." Capt. Phillips deposes that, when the vessel was built, he gave to the builder, in payment for her, a check for $10,000, which was sent to him (the captain) for that purpose by Mr. Canalle. Mr. Sawyer, of the firm of Sawyer & Menendez, deposes to the arrival at Nassau of the General Ripley, owned by Captain Phillips, in trust for sale for Mr. Canalle, with, as deponent was informed, verbal instructions to Captain Phillips to sell her in case a fair price could be obtained. Mr. Sawyer further deposes that he thereupon, himself purchased her, and on the 8th of November received from Captain Phillips a bill of sale, of which a certified copy is produced. In this bill of sale Captain Phillips describes himself as "of Charleston, in the state of South Carolina." This must be deemed his commercial residence, which, in a prize court, defines his personal relation.